**The PEOPLE of the State of Colorado, Complainant,**

v.

**James M. GOSS, Attorney-Respondent.**

**No. 82SA8.**

Supreme Court of Colorado,
En Banc.

Feb. 8, 1982.

Linda Donnelly, Disciplinary Prosecutor, Denver, for complainant.

Michael D. Gross, Colorado Springs, for attorney-respondent.

ERICKSON, Justice.

James M. Goss, the respondent in these disciplinary proceedings, has entered into a Stipulation, Agreement and Offer of Surrender of License as a suggested method for settling a series of disciplinary complaints which are pending before the Grievance Committee. In the Stipulation, Agreement and Offer of Surrender of License, the respondent has agreed to a suspension for eighteen months from the date of the approval of the stipulation by this court. We approve the Stipulation, Agreement and Offer of Surrender of License.

Our approval of the stipulation is predicated in part upon the respondent's emotional, alcoholic, and health problems and his willingness to make restitution to clients who paid the respondent for legal services which they never received. If the respondent is to be reinstated as a member of the bar of this court at the expiration of eigh-

teen months, he must fully comply with the requirements of Rule 253, C.R.C.P. By signing the stipulation, the respondent has acknowledged that the stipulation, as well as disciplinary complaints which have been filed against him, can be considered by the hearing panel at the time he seeks reinstatement. Our approval of the stipulation is conditioned upon full compliance with the terms and conditions in the Stipulation, Agreement and Offer of Surrender of License, and we therefore order the respondent to forthwith surrender his license to practice law to the Clerk of the Supreme Court of Colorado.

## I.

### Facts

The respondent, James M. Goss, was admitted as a member of the bar of this court on October 21, 1976. The only disciplinary complaints which have been made against the respondent are set forth in this opinion. Nearly all of the charges occurred as a result of the respondent's conduct during the years 1980 and 1981. During that time, the respondent was a party to a dissolution of marriage action involving his second marriage, and was attempting to overcome problems relating to overuse and dependence upon alcoholic beverages. The dissolution of marriage proceeding triggered the respondent's abuse of alcohol and caused him to admit himself to the "Ark," an alcoholic treatment center where he remained approximately a month. Shortly after his release, he unsuccessfully attempted to reconcile with his wife. The respondent then resumed drinking.

On June 1, 1981, the respondent attempted suicide and was committed to the Colorado State Hospital at Pueblo. On June 11, 1981, the respondent's mother died, and the respondent was released from the State Hospital to temporarily care for his invalid father. In our view, the alcohol and health problems, as well as the emotional problems which the respondent suffered, do not excuse his dilatory practices and the false statements to his clients which caused the disciplinary complaints now before us to be filed.

### A.

#### Ramona Strait

Ms. Ramona Strait retained the respondent on June 20, 1980, to handle an adoption proceeding and she paid a retainer of $277. The respondent neglected the adoption case and failed to set the matter for final hearing. His misfeasance and delay constituted neglect of a legal matter entrusted to him and violated DR 6–101(A)(3) (Colorado Code of Professional Responsibility).

### B.

#### Michael Moynihan

Michael Moynihan filed a complaint *pro se* in the United States District Court. After filing the complaint, he consulted the respondent and paid a retainer of $500. The respondent totally neglected his client's case and deceived his client by making false statements as to the status of the case. He violated DR 6–101(A)(3) by neglecting a legal matter entrusted to him, and DR 7–102(A)(5) by knowingly making false statements of fact to his client as to the status of the case.

### C.

#### Sylvester Batton

Sylvester Batton entrusted $1,890.72 to the respondent to pay a debt owed by Batton to a third party and to pay Batton's obligation to the United States Internal Revenue Service. Respondent was also retained to handle a divorce case for Batton. The respondent paid $400 to the third party but failed to honor his agreement with his client which required a payment to the United States Internal Revenue Service. Respondent also failed to handle the divorce action which was entrusted to him. His conduct not only constituted the neglect of a legal matter entrusted to him (DR 6–101(A)(3)), but also violated DR 9–102(B)(3) and DR 1–102(A)(4). DR 9–102(B)(3) re-

quires a lawyer to keep complete records of all funds of a client and render appropriate accounts to his client regarding them. DR 1–102(A)(4) prohibits a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

### D.

### Suzanna Sprankel

Respondent received a retainer of $157 on May 13, 1981, to represent Suzanna Sprankel in a divorce action. He totally neglected his professional responsibilities in the divorce in violation of DR 6–101(A)(3).

### E.

### Bonnie Chacon

The respondent agreed to represent Bonnie Chacon in a products liability case. Ms. Chacon claimed that she had suffered food poisoning from a can of pumpkin pie filling. She paid the respondent $170 to perform laboratory tests on the remainder of the can of pumpkin pie filling. The respondent neglected her case and failed to return her money. His conduct violated DR 6–101(A)(3) and DR 9–102(B)(4). DR 9–102(B)(4) requires a lawyer to: "Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

### F.

### Irene Marshall

Respondent was the personal representative in the Last Will and Testament of Herbert Hoover Jones, who died on January 25, 1980. The respondent neglected the estate and caused Irene Marshall to be deprived of the benefits of the estate in violation of DR 6–101(A)(3).

### G.

### Samuel M. Spauling

Samuel Spauling paid the respondent $260 to file a petition in bankruptcy. No services were performed and the respondent has not refunded any part of the retainer or cost to his client. His conduct was in violation of DR 6–101(A)(3) and DR 9–102(B)(4).

### II.

### Restitution

The respondent has agreed and is ordered by this court to make restitution to his former clients within 180 days in accordance with the following schedule:

(a) Respondent shall make restitution to Ramona Strait in the amount of $277.

(b) Respondent shall make restitution to Sylvester Batton in the amount of $1,490.72.

(c) Respondent shall make restitution to Michael Moynihan in the amount of $500.

(d) Respondent shall make restitution to Suzanna Sprankel in the amount of $157.

(e) Respondent shall make restitution to Bonnie Chacon in the amount of $170.

(f) Respondent shall make restitution to Samuel Spaulding in the amount of $260.

### III.

### Reinstatement

The respondent will not be eligible to apply for reinstatement until eighteen months after the date of the entry of this order. No application for reinstatement shall be made until the respondent supplies satisfactory proof that restitution has been made in accordance with the terms of this opinion. If an application for reinstatement is made, the respondent will be required to comply with Rule 253, C.R.C.P. It will be necessary for him at that time to carry the burden of proof to establish his fitness to practice law by clear and convincing evidence. Any application for reinstatement must establish that the respondent has satisfied the requirements for continuing legal education. In addition, if he applies for reinstatement, he may be required by the Grievance Committee to retake the Colorado bar examination.

In any reinstatement proceeding, the respondent may also be required to undergo medical or psychiatric evaluation or to otherwise meet the requirements imposed by the Hearing Committee of the Supreme Court Grievance Committee to establish his fitness to practice law. At the time the respondent applies for reinstatement, all matters contained within the Stipulation, Agreement and Offer of Surrender of License may be considered by the Hearing Panel. The suspension of the respondent for eighteen months will be made known to the National Disciplinary Data Bank, and may be disseminated on a national basis. The respondent also agrees that if he applies for a law related position during the period of his suspension he will make a copy of the Stipulation, Agreement and Offer of Surrender of License available to the person considering him for employment. Any new complaints which may be filed against the respondent may be subject to a full hearing by the Grievance Committee.

Accordingly, the respondent is ordered to forthwith surrender his license to practice law to the Clerk of the Supreme Court. Restitution shall be made in accordance with the terms of this opinion within 180 days.