The PEOPLE of the State of
Colorado, Complainant,

v.

Virgil D. DOHE, Attorney–Respondent.

No. 90SA288.

Supreme Court of Colorado,
En Banc.

Oct. 29, 1990.

Linda Donnelly, Disciplinary Counsel, Denver, for complainant.

Attorney-respondent not appearing.

PER CURIAM.

In this attorney discipline case the respondent, Virgil Donovan Dohe, was charged with two counts of professional misconduct in connection with his representation of Danny R. Tillman commencing in 1986 and his representation of Marguerite Stover in 1987. A hearing board of the Supreme Court Grievance Committee unanimously recommended that the respondent be disbarred for his misconduct in representing those two clients and that prior to being readmitted he pay certain sums to them. A hearing panel of the Committee unanimously approved the findings and recommendations of the hearing board. We agree that respondent's professional misconduct warrants disbarment.

I

Respondent was admitted to the Bar of Colorado on September 30, 1960. He is therefore subject to the jurisdiction of this Court and its Grievance Committee. C.R. C.P. 241.1(b).

II

Respondent did not file an answer to the complaint filed against him. Accordingly, a default was entered against him and the allegations of the complaint, as summarized below, were deemed admitted. C.R. C.P. 241.13(b); *People v. Richards,* 748 P.2d 341 (Colo.1987); *People v. Jacobson,* 747 P.2d 654 (1987). In May 1985, respondent initiated a civil action on behalf of Tillman alleging that Richard Thompson owed Tillman $5,132.29 pursuant to the terms of a promissory note. The case was set for trial commencing March 27, 1986.

On March 26, 1986, respondent and Thompson's attorney agreed to settle the case and to vacate the trial date. The proposed settlement provided that on March 27, 1986, Thompson's attorney would deliver a check in the amount of $6,100 to respondent, payable to respondent as trustee for Tillman; that the original promissory note would be delivered to Thompson's attorney marked "canceled" or "paid"; that both parties would execute mutual releases; and that respondent would execute a stipulation for dismissal of the civil action and forward the stipulation to the court together with a proposed order of dismissal. Respondent did not inform Tillman of the settlement agreement.

On March 27, 1986, respondent received the check, the proposed mutual releases, a stipulation for dismissal and a proposed order of dismissal. Respondent negotiated the check on April 1, 1986, without Tillman's authorization, and converted the funds to his own use.

Thompson's attorney subsequently telephoned respondent to discuss the matter. Respondent initially indicated that his client had problems with the proposed settlement; he subsequently stated that Tillman would not execute a general release because he considered the $6,100 to have been paid as settlement only of the pending promissory note litigation. When informed that under those circumstances Thompson would not settle the case, respondent said he would speak with Tillman and promptly communicate Tillman's position. Respondent did neither.

On October 27, 1986, Thompson's attorney wrote to respondent demanding delivery of the specified documents or return of the $6,100. Respondent did not reply. When Thompson's attorney spoke with re-

spondent by telephone on November 25, 1986, regarding the case, respondent said he would call back in two days. Respondent failed to do so.

Respondent did not deliver the proposed mutual releases to Tillman until early 1987. Tillman refused to sign them; directed respondent to pursue the civil action; and thereafter tried, without success, to obtain status reports from respondent respecting the litigation.

On October 2, 1987, upon discovering that his office file pertaining to Tillman had been misfiled, respondent sent the stipulation for dismissal and the original promissory note to Thompson's attorney. After the civil case was dismissed on January 29, 1988, Thompson's attorney initiated this grievance proceeding. Tillman first learned that his suit against Thompson had been settled from a Grievance Committee representative investigating the complaint filed in this proceeding.

Respondent's conduct in representing Tillman violated C.R.C.P. 241.6 and the following provisions of the Code of Professional Responsibility: DR 1–102(A)(1) (violating a disciplinary rule), DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), DR 6–101(A)(3) (neglecting a legal matter), DR 7–101(A)(1) (failing to seek lawful objectives of client), DR 7–101(A)(3) (intentionally prejudicing or damaging a client), DR 9–102(B)(1) (failing to notify client promptly of receipt of client funds), DR 9–102(B)(3) (failing to account to client regarding client funds in attorney's possession), and DR 9–102(B)(4) (failing to pay funds and deliver property to a client promptly upon request).

### III

On October 28, 1987, Marguerite Stover paid respondent a $300 retainer fee to secure his services in matters relating to the death of her husband. Respondent agreed to file appropriate documents with the probate court and to obtain appropriate transfers of title in connection with two mutual

funds, certain parcels of real property and two mortgages. On October 29, 1987, respondent filed decedent's death certificate.

From November 16, 1987, through March 2, 1988, Stover attempted to reach respondent by telephone to inquire into the status of these matters. Respondent did not reply. In January and February of 1988, Stover sent two certified letters to respondent demanding the return of her files. Respondent did not answer that correspondence. On March 2, 1988, Stover visited respondent's home and obtained her files. She subsequently retained other counsel.

Respondent's conduct in representing Stover violated C.R.C.P. 241.6. His conduct also violated the following provisions of the Code Professional Responsibility: DR 1–102(A)(1) (violating a disciplinary rule), DR 2–106(A) (charging a clearly excessive fee), DR 6–101(A)(3) (neglecting a legal matter), DR 7–101(A)(1) (failing to seek lawful objectives of client), and DR 9–102(B)(4) (failing to pay funds and deliver property to a client promptly upon request).

### IV

Respondent's clandestine settlement of Tillman's civil action against Thompson and conversion of the settlement proceeds to his own use cannot be condoned. Such professional misconduct completely undermines the foundation of mutual trust and open communication upon which the attorney-client relationship rests. Respondent's refusal to communicate with Thompson's attorney and failure to return critical documents upon request rendered meaningless his role as advocate of Tillman's interests. These repeated acts of professional misconduct were knowingly perpetrated in furtherance of respondent's own interests and to conceal his misdeeds. In representing Stover, respondent further demonstrated complete indifference to the reasonable requests of his client and to his obligation of faithfully and fully representing her legitimate interests.

Respondent's misconduct in knowingly converting Tillman's funds is sufficiently

。<br>

egregious to warrant imposition of the sanction of disbarment. ABA *Standards for Imposing Lawyer Sanctions* § 4.11 (1986). As the hearing board found, the record establishes the following aggravating factors which may be considered in determining the appropriate sanction in this case: a dishonest or selfish motive, ABA *Standards* § 9.22(b); a pattern of misconduct, ABA *Standards* § 9.22(c); respondent's history of multiple offenses, ABA *Standards* § 9.22(d); the fact that respondent had substantial experience in the practice of law, ABA *Standards* § 9.22(i); and indifference to making restitution, ABA *Standards* § 9.22(j). The record also establishes that respondent received two letters of admonition, on June 30, 1978, and on March 28, 1985; this prior discipline constitutes an additional aggravating factor. ABA *Standards* § 9.22(a).

By way of mitigation, respondent suggests in correspondence that his misconduct resulted from alcohol abuse. However, no evidence of such alcohol abuse was submitted to the hearing board, and the aggravating factors present here far outweigh this potentially mitigating circumstance. Under all of the circumstances established by the evidence, we conclude that respondent should be disbarred from the practice of law as the result of his multiple and flagrant acts of professional misconduct.

Accordingly, it is ordered that respondent Virgil D. Dohe be disbarred and that his name be stricken from the roll of lawyers authorized to practice before this court, effective thirty days after the date of this opinion. C.R.C.P. 241.21(a), 7A C.R.S. (1989 Supp.). It is further ordered that prior to seeking readmission respondent shall pay Stover the portion of the $300 retainer fee he received from her that was unearned at the time she obtained new counsel, together with statutory interest thereon from the date of this opinion, and pay Tillman restitution of $6,100, together with statutory interest on such sum from April 1, 1986, to the date of repayment. *See* § 5–12–106(2), 2 C.R.S. (1989 Supp.). Respondent shall also pay the costs of these proceedings, in the amount of $105.67, which sum shall be paid within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600—17th Street, Suite 500S, Denver, Colorado 80202–5435.

VOLLACK, J., does not participate.